USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/18/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GUJARAT STATE PETROLEUM CORPORATION LTD., ALKOR PETROO LTD., and WESTERN DRILLING CONTRACTORS PRIVATE LTD.,

    Petitioners,

v.

REPUBLIC OF YEMEN and YEMENI MINISTRY OF OIL AND MINERALS,

    Respondents.

No. 19-mc-0547 (RA)

OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

    Petitioners Gujarat State Petroleum Corporation Limited, Alkor Petroo Limited, and Western Drilling Contractors Private Limited (collectively, "Petitioners") are in possession of a judgment against Respondents the Republic of Yemen and the Yemeni Ministry of Oil and Minerals ("Yemen" and "the Ministry," and collectively, "Judgment Debtors") in the amount of $3,788,471.34, plus post-judgment interest. Although it has been several years since that judgment was awarded, Petitioners have not been able to collect on it. Now before the Court is Petitioners' motion to compel post-judgment discovery from nonparty the Federal Reserve Bank of New York ("the Fed") regarding accounts held at the Fed by nonparty the Central Bank of Yemen, pursuant to an information subpoena. For the reasons that follow, the Court finds that, although the Fed's challenge to the subpoena fails to the extent that it relies on the Foreign Sovereign Immunities Act, the subpoena is nonetheless overly broad. Because the subpoena, as currently drafted, is not sufficiently tailored to discover only the third-party asset information that is relevant to locating

Judgment Debtors' assets, Petitioners' motion to compel is denied. The Court will hold a conference to further discuss the discovery that Petitioners seek.

## BACKGROUND

Petitioners are oil companies that obtained an arbitral award against Judgment Debtors in 2015, which was issued by the International Court of Arbitration of the International Chamber of Commerce. *See* Order and Default Judgment, *Gujarat State Petroleum Corp. Ltd. et al. v. Republic of Yemen et al.*, No. 16-CV-1383 (DLF) (D.D.C. Oct. 3, 2018). In 2016, Petitioners filed a petition in the United States District Court for the District of Columbia to confirm their arbitral award. *Id.* Judgment Debtors failed to appear in that action, and in October 2018, the district court confirmed the award and entered default judgment in the amount of $3,788,471.34, plus post-judgment interest at the statutory rate. *Id.* Petitioners then registered that judgment in this Court in November 2019. Judgment Debtors have not appeared in this action.

Seeking to collect on their judgment, Petitioners served the Fed with an information subpoena in January 2020. The subpoena sought broad discovery of any accounts with the Fed that were held by, or for the benefit of, Judgment Debtors. It sought similar discovery of any accounts with the Fed that were held by or for the benefit of nonparty the Central Bank of Yemen ("the Central Bank")—including the present value of the Central Bank's accounts, their contents, and the source and destination of all withdrawals, deposits, and transfers connected to those accounts from the past five years. *See* Declaration of Gregory Starner ("Starner Dec.") Ex. A at 5-10. The subpoena also contained a restraining notice, which barred the Fed from selling, assigning, transferring, interfering with, or disposing of any property in those accounts. *Id.* at 2-3. Petitioners sought discovery of the Central Bank's accounts on the basis of documents purportedly showing that the Ministry had funneled payments for its own benefit through at least

one of those accounts. *See* Starner Dec. Ex. C. Petitioners assert that these documents create an inference that the Central Bank's accounts contain funds belonging to Judgment Debtors, information about the current location of funds belonging to Judgment Debtors, or both.

The Fed responded to the subpoena in February 2020. It explained that while neither Judgment Debtor held any property or accounts with the Fed, the Central Bank did hold such accounts. The Fed then objected to the subpoena on the ground that it seeks information about assets that are presumptively immune from attachment or execution pursuant to the Foreign Sovereign Immunities Act ("FSIA")—including the Central Bank's assets. Starner Dec. Ex. B at 4-11. The Fed's position appears to be informed by a letter that counsel for the Central Bank sent to Petitioners' counsel on January 27, 2020, in which the Central Bank represented that the funds in its accounts with the Fed are held for its own account and thus immune from attachment or execution under the FSIA. Declaration of Meghann Donahue ("Donahue Dec.") Ex. C. The Central Bank has not personally made these arguments before this Court or any other court.

Further correspondence and meetings between Petitioners and the Fed proved fruitless. *See* Starner Dec. Exs. C-E. In one of their letters to the Fed, Petitioners attached documents appearing to show that the Ministry had directed entities, including Petitioner Gujarat, to submit payments owed to the Ministry to the Central Bank's account with the Fed; those payments were flagged "for onward credit" or "for further credit" to the Ministry's own accounts at banks in Yemen. *See* Starner Dec. Ex. C at 7-23. In response, the Fed characterized these documents as "simply showing routing information and payment orders for wire transfers. . . in which the New York Fed acted as an intermediary bank to process funds transfers," and asserted that none of those payment orders "directs deposit for ultimate credit to accounts in the name of the Central Bank of Yemen itself,

3

let alone to the Central Bank of Yemen's accounts at the New York Fed." Starner Dec. Ex. D at 1-2.

Petitioners have now moved to compel post-judgment discovery from the Fed regarding information in and about the Central Bank's accounts. At oral argument, the parties indicated that the restraint portion of the subpoena had been withdrawn, and Petitioners accordingly represented that they were not seeking attachment or execution of the Central Bank's assets.

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.

Federal Rule of Civil Procedure 69, in turn, provides that "[i]n aid of the judgment or execution, [a] judgment creditor . . . may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located."

The Court has considerable discretion in deciding a motion to compel discovery. *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (explaining that district courts are given "broad latitude to determine the scope of discovery and to manage the discovery process").[1] The party objecting to a discovery request "bears the burden of showing why discovery should be denied." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). That party may meet its burden by showing that a discovery request is irrelevant, overly broad, burdensome, or oppressive. *See id.* at 88.

---

[1] Unless otherwise noted, case quotations omit all internal citations, quotation marks, alterations, and footnotes.

## DISCUSSION

I. **The FSIA Does Not Bar Petitioners' Subpoena to the Extent It Seeks Discovery of the Central Bank's Assets**

As an initial matter, the Court construes Petitioners' motion to compel as limited to discovery regarding the Central Bank's accounts at the Fed. In their reply brief, Petitioners clarify that they "only seek compliance with the Information Subpoena at this time and are not seeking to enforce the restraining notice," which has been withdrawn. Reply MOL at 10 n.5. And at oral argument, counsel for Petitioners confirmed that at this juncture, they seek only discovery from the Fed, not attachment or execution of any of the Central Bank's assets held at the Fed. Accordingly, the Court focuses its analysis on the narrow issue of post-judgment discovery.

In opposing Petitioners' subpoena, the Fed invokes the FSIA, 28 U.S.C. §§ 1602 *et seq.*, on behalf of the Central Bank, which has not appeared in this action.[2] It is undisputed that the Central Bank is a foreign state under the FSIA and thus subject to the statute's protections. *See id.* § 1603 (defining a foreign state as, among other things, "an agency or instrumentality of a foreign state"). The FSIA does not, however, bar Petitioners' subpoena to the extent it seeks discovery of the Central Bank's assets.

"[T]wo types of foreign sovereign immunity [are] addressed in the FSIA: (1) 'immunity of a foreign state from jurisdiction,' and (2) 'immunity from attachment and execution of property of a foreign state." *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 286 (2d Cir. 2011) (quoting 28 U.S.C. §§ 1604, 1609). The former immunity is also known as "immunity from suit." *Id.* at 288. These two immunities "operate independently" from each other, *id.*, and both are subject to their own specific exceptions, *see* 28 U.S.C. §§ 1605, 1610. Although Judgment Debtors

---

[2] Petitioners do not challenge the Fed's standing to invoke the FSIA on the Central Bank's behalf.

have waived their FSIA jurisdictional immunity in this enforcement action,[3] this alone does not deprive the Central Bank—which enjoys a presumption of juridical separateness from those entities, see *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 89-90 (2d Cir. 2015)—of its jurisdictional immunity. Moreover, the Central Bank's assets are immune from attachment and execution unless certain FSIA exceptions apply. At argument, the debate centered on whether the Central Bank's FSIA immunity precludes Petitioners' subpoena, in part or in whole.

Petitioners' argument as to why the FSIA does not bar their subpoena relies on the Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) ("*NML*"). In *NML*, a judgment creditor held a judgment against the Republic of Argentina, which had waived its jurisdictional immunity pursuant to a bond indenture agreement. *Id.* at 136 & n.1. In an effort to collect on the judgment, creditor NML issued subpoenas to nonparty private banks that held accounts maintained by or on behalf of Argentina. *Id.* at 137. The subpoena sought information "to locate Argentina's assets and accounts, learn how Argentina moves its assets through New York and around the world, and accurately identify the places and times when those assets might be subject to attachment and execution." *Id.* Argentina and one of the third-party banks moved to quash the subpoena. The district court denied the motion, and the Second Circuit affirmed, concluding that the district court's discovery order did not infringe on Argentina's sovereign

---

[3] Yemen and the Ministry have waived their jurisdictional immunity because Petitioners' action seeks to confirm an arbitral award that is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 28 U.S.C. § 1605(a)(6) ("A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards"); 9 U.S.C. § 207 (provision of the Federal Arbitration Act providing that "[w]ithin three years after an arbitral award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards] is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration").

6

immunity. The Circuit first emphasized the importance of "distinguish[ing] discovery requests made before a court conclusively has jurisdiction over a foreign sovereign from those made after such jurisdiction has been ascertained." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 209-10 (2d Cir. 2012) ("2012 *EM Limited*"). With that distinction in mind, the 2012 *EM Limited* court held that the discovery order was permissible for two reasons. First, because creditor NML was seeking "discovery from a defendant over which the district court indisputably had jurisdiction," prior precedents warning that "courts must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA . . . [were] inapplicable." *Id.* at 210. Second, discovery would not infringe on Argentina's sovereign immunity because "the subpoenas at issue were directed at . . . commercial banks that have no claim to sovereign immunity, or to any other sort of privilege," meaning that their "compliance with [the] subpoenas will cause Argentina no burden and no expense." *Id.* "To the extent Argentina expresses concerns that the subpoenas will reveal sensitive information," the court explained, "it is asserting a claim of privilege," an issue on which the FSIA is silent. *Id.*

The Supreme Court affirmed. The Court began by recognizing that both the federal and New York state "rules governing discovery in postjudgment execution proceedings are quite permissive." 573 U.S. at 138. The operative question was thus whether principles of foreign sovereign immunity posed any limit on those permissive rules. The Court observed that "[f]oreign sovereign immunity is, and always has been, a matter of grace and comity . . . and not a restriction imposed by the Constitution." *Id.* at 140. The FSIA, enacted in 1976, codified the United States' new "restrictive" approach toward sovereign immunity under which "immunity shields only a foreign sovereign's public, noncommercial acts." *Id.* The Court further noted that the Act was designed to "comprehensively regulate" the immunity of foreign sovereigns—meaning that "any

7

sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text." *Id.* at 141-42.

Turning next to the FSIA's text, the Court held that while the statute clearly confers both jurisdictional immunity pursuant to § 1604 and immunity from attachment and execution pursuant to § 1609, "[t]here is no third provision [of the FSIA] forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." *Id.* at 142. The Court declined Argentina's invitation to "draw meaning from this silence," and instead concluded that the FSIA poses no bar to post-judgment discovery on the assets of a foreign sovereign. *Id.* at 143. In so concluding, the Court explicitly rejected Argentina's argument that "if a judgment creditor could not ultimately execute a judgment against certain property [of Argentina's that enjoyed presumptive execution immunity], then it has no business pursuing discovery of information pertaining to that property." *NML*, 573 U.S. at 144. To the contrary, the Court observed, the very "reason for the[] subpoenas is that NML *does not yet know* what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law." *Id.* In short, the FSIA did not limit the post-judgment discovery that could be taken by NML, irrespective of the likelihood that discovered assets could be attached and executed on.[4]

Petitioners would have the Court rely on the language in *NML* to conclude that, because the Central Bank is neither being haled into court despite its jurisdictional immunity nor having its assets attached or executed on despite its attachment and execution immunity, the FSIA offers no shield to the requested subpoena. The Fed has urged the Court to more narrowly construe *NML*

8

---

[4] The Court did not address whether Federal Rule of Civil Procedure 69 might supply independent limitations on the post-judgment discovery to which NML was entitled. *See* 573 U.S. at 140 ("[T]his is not a case about the breadth of Rule 69(a)(2)."). It did note, however, that "information that could not possibly lead to executable assets is simply not relevant to execution in the first place" under Federal Rule of Civil Procedure 26. *Id.* at 144. Whether either of these rules mandates a limitation on Petitioners' subpoena is discussed in Part II, *infra*.

as applying only to situations where—unlike here—the foreign sovereign whose assets will be discovered is already properly before the Court under an exception to the FSIA. Because the Central Bank's immunity is intact, the Fed argues, the subpoena, particularly its restraining notice, is improper even if the Central Bank is not compelled to appear in or defend this action and even if its assets are not yet subject to attempted attachment or execution.

The Fed's proposed distinction, however, cannot easily be reconciled with *NML*. That is, in light of the Supreme Court's conclusion that the FSIA offers no immunity from discovery, the Court is not persuaded that otherwise proper discovery becomes improper simply because the sovereign about whom that discovery is being sought is not subject to either or both of the immunities that the statute does grant. Examining the FSIA's two distinct immunities only further reinforces the Court's conclusion that *NML* squarely controls here.

First, the information subpoena does not infringe on the Central Bank's jurisdictional immunity because the subpoena does not subject it to liability in this action. Although *NML* does not conclusively answer this question because there was jurisdiction over the sovereign whose assets were being discovered, it would be a highly strained reading of the Court's opinion—which appeared to turn on the plain text of the FSIA, rather than on the case's specific factual circumstances—to infer from it an unspoken carveout for situations where post-judgment discovery implicates the assets of an immune nonparty entity. Indeed, it is difficult to see how Petitioners' subpoena would infringe on the Central Bank's jurisdictional immunity when the Central Bank would have no obligation to appear in court or take any action in response to the subpoena, and when it is not otherwise threatened with liability. *See Esso Exploration & Production Nigeria Ltd. v. Nigerian National Petroleum Corp.*, No. 14-CV-8445 (WHP), 2017

WL 3491975, at *2 (S.D.N.Y. Aug. 15, 2017) (rejecting the argument that the FSIA applied to a nonparty sovereign central bank when it did "not face any liability in this proceeding").

Second, the fact that the Central Bank's assets may be immune from attachment and execution under the FSIA does not mean that the FSIA precludes discovery about those assets. Indeed, in explicitly rejecting Argentina's argument that the statute requires post-judgment discovery to be limited to assets that are known to be attachable, the *NML* Court explained that the very "reason for the[] subpoenas is that NML *does not yet know* what property Argentina has and where it is, let alone whether it is executable under the relevant jurisdiction's law." 573 U.S. at 144. Courts have subsequently relied on *NML* in holding that the FSIA does not preclude post-judgment discovery of a foreign sovereign's assets notwithstanding the possibility that those assets will be immune from attachment and execution. *See, e.g.*, *Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 17 (2d Cir. 2014) (explaining that the proposition that "the FSIA prohibits discovery of sovereign property that is potentially immune from attachment . . . has already been rejected by the Supreme Court"); *Owens v. Republic of Sudan*, No. 01-CV-2244 (JDB), 2020 WL 4039302, at *4 (D.D.C. July 17, 2020) ("[W]hether an asset is subject to execution does not determine whether information about that asset is discoverable."); *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 96 n.4 (D.D.C. 2017) ("[P]laintiffs can seek discovery wider than the scope of what is ultimately attachable."). Such broad discovery is permissible even when it "reach[es] entities" that are "not liable for" a sovereign's debts, such as nonparty banks, because "an entity that is closely tied to (but legally distinct from)" that sovereign "may possess information about [its] assets, *even if it does not own or hold those assets itself*." *Aurelius*, 589 F. App'x at 18 (emphasis added). The Court sees little difference, so far as the FSIA is concerned, between the subpoenas permitted in *Aurelius* and the subpoena here. Both seek discovery from

10

nonparties about a judgment debtor's assets: the instant subpoena simply acknowledges that information about those assets may be gleaned by discovering information about the Central Bank's accounts.[5]

To be sure, the Second Circuit has previously instructed that "[i]n the FSIA context, discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007) ("2007 *EM Limited*"). Relying on that principle, the Circuit in 2007 quashed a post-judgment subpoena issued under similar, but not identical, circumstances to those present here. A creditor that held a judgment against the Republic of Argentina issued a subpoena to the Fed, which sought to restrain funds held at the Fed in an account of a nonparty sovereign—Argentina's central bank. *See id.* at 469. The subpoena also "sought discovery on five issues relating to the validity of the Amended Restraining Notices." *Id.* The Circuit first held that the central bank's assets at the Fed were immune from attachment under the FSIA and could not be used by the judgment creditor to satisfy its judgment against Argentina. *See id.* at 472-86. Then, echoing a Fifth Circuit case that stated that "FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation," the Circuit held that the judgment creditor was "not entitled to any . . . discovery" regarding the central bank's funds at the Fed because the record clearly indicated that those funds "were never an attachable asset," meaning that the creditor had "failed to show a reasonable basis for assuming jurisdiction over" the bank. *Id.* at 486 (first quotation quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000)).

---

[5] To the extent the Fed argues that the immunity of the Central Bank's assets from attachments means that the discovery sought has no possibility of aiding Petitioners in executing their judgment, that theory is addressed in Part II, *infra*.

In this Court's view, though, the 2007 *EM Limited* case does not compel quashing the instant subpoena.  Although the subpoena there was, as here, issued in the post-judgment posture, the subpoena's discovery requests appeared to be geared toward determining whether an FSIA exception applied such that the nonparty sovereign's assets could be attached and ultimately executed on.  *Id.* (characterizing the discovery at issue as "discovery to substantiate exceptions to statutory foreign sovereign immunity").  Here, though, Petitioners' subpoena resembles more traditional Rule 69 discovery: it is geared toward locating the assets of Judgment Debtors, over whom there is indisputably jurisdiction.  Because Petitioners seek discovery not to substantiate "allegations of specific facts crucial to an immunity determination," but simply to locate Judgment Debtors' assets, the rule that discovery be ordered only "circumspectly" would seem not to apply here.  To put it another way, because it has already been established that there is jurisdiction over the party sovereigns—Judgment Debtors—this case appears to implicate what the Second Circuit has previously described as a more permissive form of discovery.  *See* 2012 *EM Ltd.*, 695 F.3d at 209-10 (distinguishing "discovery requests made before a court conclusively has jurisdiction over a foreign sovereign from those made after such jurisdiction has been ascertained" and allowing post-judgment discovery).

The Court, moreover, has doubts as to whether this aspect of the 2007 *EM Limited* case's analysis controls, at least in this particular post-judgment discovery context, following *NML*.  In the same breath that the Circuit stated that "FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation," it concluded that there was "no indication on this record that the District Court improperly calibrated the delicate balancing between permitting discovery . . . and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery."  473 F.3d at 469.  But, of course,

12

according to *NML*, there is no such thing as a sovereign's "immunity from discovery."[6] And even if the broad reading of the FSIA in which it provides immunity "from the costs, in time and expense, and other disruptions attendant to litigation" still governs after *NML*, the very Second Circuit decision that *NML* affirmed rejected the proposition that such disruptions were imposed by the type of third-party subpoena compliance requested here. *See* 2012 *EM Ltd.*, 695 F.3d at 210 (explaining that third-party compliance with subpoenas that were "directed at . . . commercial banks that have no claim to sovereign immunity, or to any other sort of privilege" would "cause Argentina no burden and no expense"). So too here: the Fed has not pointed to any burden or expense that the Central Bank will suffer as a result of its compliance with the subpoena.

Given that Petitioners' subpoena implicates neither the Central Bank's liability nor the security of its own assets, this case closely mirrors a post-*NML* decision from this District that allowed discovery of a nonparty sovereign's assets. In *Esso Exploration & Production Nigeria Ltd. v. Nigerian National Petroleum Corp.*, No. 14-CV-8445 (WHP), 2017 WL 3491975 (S.D.N.Y. Aug. 15, 2017), a plaintiff was "conducting jurisdictional discovery to ascertain whether" there was "a basis to assert personal jurisdiction over Nigerian National Petroleum Corporation." *Id.* at *1. As part of that effort, it subpoenaed nonparty banks for information on accounts held by that corporation—including accounts held by nonparty the Central Bank of

---

[6] For similar reasons, this case is distinguishable from *Preble-Rish Haiti, S.A. v. Republic of Haiti*, 558 F. Supp. 3d 155 (S.D.N.Y. 2021), *reconsideration denied*, 2021 WL 4555762, *appeal filed*, No. 21-2469. There, a judgment creditor sought and received attachment of assets in aid of an arbitration against Haiti and one of its agencies. The attached assets were held in a Citibank account in the name of Haiti's central bank. *Id.* at 157. The central bank then moved to intervene, vacate the attachment, and quash a discovery subpoena the judgment creditor had served on Citibank. The court granted the requests, concluding that "Preble-Rish has failed to rebut the presumption that the Citibank account in the name of [the central bank] is immune from attachment" under the FSIA and that the subpoena should be quashed because Preble-Rish had "failed to show a reasonable basis for assuming jurisdiction over" the central bank. *Id.* at 160-61 (citing 2007 *EM Ltd.*, 473 F.3d at 486). In *Preble-Rish*—unlike here—the subject discovery was sought before judgment and for the apparent purpose of determining whether an exception to the FSIA existed that would permit attachment of the central bank's assets. And *Preble-Rish*, like *EM Limited*, relied on the presumptively now-inapplicable principle that "FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation." *Id.* at 161.

Nigeria, on the theory that the defendant controlled or benefited from those accounts. *Id.* The central bank invoked the FSIA to oppose the subpoenas, arguing that the statute "confers immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to discovery." *Id.* at *2. The court rejected this argument, reasoning that, "as a non-party, [the central bank] does not face any liability in this proceeding." *Id.* It also observed that the plaintiff did not "seek to attach any of [the central bank's] assets," but "merely [sought] information on [the central bank's] accounts," and that the subpoenas were directed to private entities. *Id.* Accordingly, the court held, the "FSIA's immunities do not apply at this juncture to [the central bank]." *Id.* (citing *NML*, 573 U.S. 134).

*Esso*'s narrower reading of the scope of the FSIA is persuasive in the absence of controlling precedent that reconciles the apparent tension between *NML* and prior Second Circuit cases. The Circuit may well decide in the future that *NML*'s treatment of post-judgment discovery does not apply when jurisdiction has not been established over the particular sovereign whose assets are being discovered, and that the narrower approach described in the 2007 *EM Limited* case instead controls in those situations. But without any such decision, the Court is guided by *NML*'s plain language that appears to authorize the discovery sought here.

Finally, in challenging the subpoena, the Fed raises important policy concerns, arguing that authorizing the subpoena here will disincentivize foreign sovereigns from depositing their funds at the Fed and that exposing such funds to attachment and execution will cause "significant foreign relations problems." Opp. MOL at 20. Although this statement is addressed to the subpoena's now-withdrawn restraining notice, rather than to its discovery requests, the Court finds the Fed's argument compelling even with respect to discovery orders that reveal information about nonparty foreign sovereigns' assets. But when *NML* confronted the similar question of whether the FSIA

14

truly does not "protect foreign states from postjudgment discovery clearinghouses," it concluded that this was an issue for Congress, not for the courts. 573 U.S. at 145. The same is true here. The Court also notes that "[t]o the extent [the Fed] expresses concern that the subpoenas will reveal sensitive information, it is asserting a claim of privilege and not a claim of immunity." 2012 *EM Ltd.*, 695 F.3d at 210. Those concerns can be addressed through a robust protective order that would limit access to any responsive discovery. *See, e.g.*, *Esso*, 2017 WL 3491975, at *4 (describing a protective order providing that a sovereign "central bank's bank account information be designated for 'attorneys['] eyes only'").[7]

Accordingly, the Court concludes that the FSIA does not preclude Petitioners' subpoena to the extent it seeks discovery of the Central Bank's assets. Given Petitioners' withdrawal of the subpoena's restraining notice, the Court need not consider whether the FSIA would prohibit that restraining notice. If Petitioners later seek to attach or execute on the Central Bank's assets at the Fed, the Fed may renew its FSIA-based arguments against such attachment or execution at that time.

## II. The Subpoena Is Overbroad

The Fed also argues that the discovery sought by Petitioners' subpoena is barred under Federal Rule of Civil Procedure 69 and New York state law principles, because information about the Central Bank's assets will not aid Petitioners in the execution of their judgment. The Court agrees in part and disagrees in part: it finds that, while some information about the Central Bank's accounts is likely relevant to locating Judgment Debtors' assets, the current subpoena is overbroad because it is not tailored to discovering only the third-party asset information that is relevant to achieving that goal.

---

[7] The Fed may, of course, raise any privilege arguments it finds appropriate to assert in the future.

Rule 69 provides that a judgment creditor, "[i]n aid of the judgment or execution . . . may obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules] or by the procedure of the state where the court is located." Under New York law, in turn, judgment creditors may discover "all matter relevant to the satisfaction of [a] judgment." N.Y. Civ. Prac. L. § 5223. The Supreme Court has described these standards as "quite permissive." *NML*, 573 U.S. at 138. Even in cases where the assets of foreign sovereigns are implicated, courts have regularly concluded that "the presumption should be in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets." *Owens*, 2020 WL 4039302, at *5 (quoting *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998)) (allowing discovery of judgment debtor Sudan's bank accounts, including accounts held by its agencies and instrumentalities). Those related matters may "include . . . information relevant to the existence *or transfer* of" the judgment debtor's assets," as well as the "location" and "source" of those assets. *Id.* (emphasis added).

The Fed argues that, because Petitioners could not permissibly attach or execute on the Central Bank's assets, any discovery about those assets is necessarily irrelevant to executing the judgment. But Petitioners have asserted that their ultimate goal is not to attach the Central Bank's assets at the Fed, but rather, to locate potentially attachable assets belonging to Judgment Debtors, wherever they may be found, and that discovering the Central Bank's assets will aid in this goal. Again, the law is clear that a judgment creditor need not prove that post-judgment discovery will lead to attachable or executable assets in order to obtain that discovery. *See NML*, 573 U.S. at 144; *Aurelius*, 589 F. App'x at 17; *Owens*, 2020 WL 4039302, at *4; *Amduso*, 288 F. Supp. 3d at 96 n.4.

Of course, this is not to say that post-judgment discovery is completely untethered from the concepts of attachability or executability; to the contrary, "information that could not possibly lead to executable assets is simply not relevant to execution in the first place" under Rule 26. *NML*, 573 U.S. at 144; 2012 *EM Ltd.*, 695 F.3d at 207 ("The scope of discovery under Rule 69(a)(2) is constrained principally in that it must be calculated to assist in collecting on a judgment."). Capitalizing on this limitation, the Fed contends that because information about the Central Bank's accounts would not reveal whether or how the Central Bank sent funds from its own accounts to those of Judgment Debtors, the discovery sought will not produce any information that could possibly lead to attachable or executable assets that would satisfy the judgment. *See* Opp. MOL at 17 (asserting that "the Central Bank's New York Fed account records would not reflect how the Central Bank paid the Ministry or any other beneficiary"). At oral argument, the Fed maintained its position that its records would not reflect any fund transfers from the Central Bank to beneficiary entities, including either Judgment Debtor.

Petitioners have, however, provided evidence suggesting that the Central Bank's account records do have information relevant to the existence and location of at least one Judgment Debtor's assets. Namely, they have submitted documents showing that the Ministry has previously routed its assets through the Central Bank's accounts with the Fed in the process of sending those assets to the Ministry's own accounts at other banks. *See* Starner Dec. Ex. C at 7-23 (payment instructions directing the deposit of funds owed to the Ministry into the Central Bank's account with the Fed and directing the further credit of those funds into the Ministry's accounts at a separate bank). These documents appear to depict both the amount of the assets transferred to the Ministry's accounts and information about the Ministry accounts to which they were ultimately sent or intended to be sent. *See id.* This evidence indicates that the Fed's records of the Central

17

Bank's accounts likely contain "information relevant to the existence or transfer of [Judgment Debtors'] assets" that will aid Petitioners' efforts to "trace" those assets to their current location, where they may or may not be subject to attachment and execution. *Owens*, 2020 WL 4039302, at *5.[8]

The Fed next relies on the principle that "non-parties cannot be required to disclose their own assets." *Koon Chun Hing Kee Soy & Sauce Factory, LTD. v. Star Mark Mgmt., Inc.*, No. 04-CV-2293, 2010 WL 3780275, at *1 (E.D.N.Y. Sept. 22, 2010). But the cases that invoke this rule also make clear that a judgment creditor "is entitled to examine third parties to determine if a judgment debtor has concealed or transferred assets applicable to satisfying its judgment" and that, accordingly, discovery of nonparty assets that is "relevant to locating defendants' assets" is permissible. *Id.* at *1, *3; *see also GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07-CV-3219 (PKC) (DF), 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012) ("[P]ost-judgment discovery against a non-party should be limited to a search for the judgment debtor's hidden assets."). In other words, discovery of a nonparty's own assets is overbroad only "[a]bsent any evidence of transfers of assets to these non-parties." *Star Mark Mgmt.*, 2010 WL 3780275, at *3. Because Petitioners have offered evidence supporting the inference that Judgment Debtors have in the past transferred or directed the deposit of certain of their assets to the accounts of the Central Bank—either temporarily or permanently—the Court finds that this principle does not pose a bar to *any* discovery of the Central Bank's assets under these circumstances.[9] *See id.* (discussing plaintiff's

---

[8] At argument, Petitioners also asserted that discovery of the Central Bank's accounts could provide information about potential nonparty garnishees from whom assets could be obtained in satisfaction of their judgment.

[9] This evidence does not, however, persuade the Court that the Central Bank is the alter ego of one or more Judgment Debtors such that its assets may be discovered to the same extent that Judgment Debtors' own assets may be discovered. "[A]n alter-ego relationship [may be] established if: (1) the instrumentality is so extensively controlled by its owner that a relationship of principal and agent is created; or (2) the recognition of an instrumentality's separate legal status would work a fraud or injustice." *EM Ltd. v. Banco Central de la Republica Argentina*, 800 F.3d 78, 90 (2d Cir. 2015). Although Petitioners' evidence suggests that discovery of some of the Central Bank's account

"right to seek asset discovery of . . . non-parties if there is any evidence of direct or indirect transfers of relevant assets from [defendants] to any of these non-parties, or if any other evidence is developed that renders the discovery plaintiff seeks relevant to locating defendants' assets").

That said, the Court recognizes that it may well be that much of the information sought about the Central Bank's accounts is not relevant to locating Judgment Debtors' assets. For instance, Petitioners' subpoena seeks, without limitation: the "present value" and "contents" of the Central Bank's accounts; "the value of any and all monies, investments, assets and/or other property held by or for the benefit of" the Central Bank; all "assets, obligations and liabilities" of the Central Bank; whether there exists "any bank, brokerage or trust accounts" in which the Central Bank has an interest; and "any person or entity holding property, funds, or other assets" for the Central Bank. Starner Dec. Ex. A.[10] There is no attempt to tether any of this information, or the other information requested in the subpoena, to the assets of Judgment Debtors that may have passed through or that may currently sit in the Central Bank's accounts. Accordingly, the Court finds that the subpoena, as it is currently written, is overbroad in light of the limitations on third-party asset discovery. *See, e.g.*, *D'Avenza S.p.A. In Bankr. v. Garrick & Co.*, No. 96-CV-0166 (DLC) (KNF), 1998 WL 13844, at *4 (S.D.N.Y. Jan. 15, 1998) (finding that subpoena requests were "overly broad" when they "demand[ed] a wide range of . . . information from" a third party "regardless of whether such information relates to or may be said to be reasonably related to the judgment debtor, its assets, or suspected transfers of its assets" and modifying the subpoena to permit only the disclosure of third-party information that "appear[s] to be reasonably related to

---

information will prove relevant to locating Judgment Debtors' assets, it does not establish that Judgment Debtors exercise extensive control over the Central Bank or that recognizing the Central Bank's separate status would condone fraud or injustice.

[10] This is not intended to be an exhaustive list of the ways in which the information subpoena appears to be overbroad.

ascertaining the status or whereabouts of [the judgment debtor's] assets"); *see also Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC*, No. 20-CV-0936 (JGK) (RWL), 2021 WL 621226, at *5 (S.D.N.Y. Feb. 17, 2021) (finding a discovery request to be "overly intrusive and unjustified" when it sought "all correspondence" involving certain nonparties on the ground that "not all [such] correspondence necessarily sheds light on where assets came or went"). The Court will, accordingly, hold a conference with the parties to discuss next steps with respect to the discovery that Petitioners seek.

## CONCLUSION

For the foregoing reasons, the Court denies Petitioners' motion to compel discovery pursuant to their information subpoena. The Clerk of Court is respectfully directed to terminate the motion at docket numbers 8, 17, and 19. Within one week from the date of this Order, the parties shall submit a joint letter to the Court with their availability for a conference. In that letter, the parties shall indicate their preference as to whether the conference should in person or remote.

SO ORDERED.

Date: May 18, 2022
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge